Please call the next pick. 3-16-0593, Prairie Farms Dairy v. Workers' Compensation Comm'n. Counselor, you may proceed. May I appease the Court, Counselor? My name is Ethan Willenberg and I represent the appellant, Prairie Farms Dairy, in this matter. We have appealed the Illinois Workers' Compensation decision finding in favor of Mr. Lurie Watts on the issues of causal connection, medical bills, and the nature and extent of his injury. We believe there are two standards of review for this appeal depending on the issues. The first issue is involving causal connection and medical bills should be judged under the manifest weight of the evidence standard. The second issue involving whether the Commission followed the law in issuing its decision regarding the nature and extent of Mr. Watts' disability under Section 8.1b of the Illinois Workers' Compensation Act. This should be reviewed de novo since it's an issue of law regarding statutory construction. Now, Mr. Watts injured his right knee at work on November 30, 2013. Prairie Farms Dairy did not dispute the accident approximately five and a half months later. He underwent a right knee surgery for a partial medial meniscectomy. The arbitrator found causation and awarded medical benefits and permanent partial disability benefits. The Illinois Workers' Compensation Commission modified the award and reduced the permanent partial disability benefits from 22.5% loss of use of a right leg to 15% loss of use of a right leg. The Commission considered the factors of Section 8.1b of the Illinois Workers' Compensation Act in its order. Since Mr. Watts' attorney obtained an impairment rating by a physician named Dr. Richard Russo and the accident occurred after September 1, 2011. As to the issue of causal connection, it is Mr. Watts' burden of proof to prove all elements of the claim by a preponderance of the evidence. We feel he didn't meet this burden in proving causal connection for the following reasons. First, Mr. Watts didn't seek medical treatment after the first emergency room visit on November 30, 2013 until January 10, 2014 or 41 days after the alleged accident. During the interim, Mr. Watts was actually examined in the emergency room for another condition but had no right knee complaints at that time. Is there any dispute that he had a horizontal tear of the body and posterior horn of the medial meniscus? There is no dispute whatsoever. There not? We did not have an expert opinion regarding the tear. Okay, so you've got the claimants pointing to the MRI scan, records of the Midwest Orthopedic Center and the deposition testimony of Dr. Russo. If the causation Russo's opinion appears to be the only causation opinion in the record, so why isn't that sufficient evidence to support the commission's decision? Well, we believe there's also some credibility issues that would affect Dr. Russo's opinion as well. Okay, there's some alleged inconsistencies, maybe some variance, but again, the commission acknowledged that. They took it into consideration and they basically decided even though you have these alleged variances in the testimony, we still find in his favor. So can we say, hey, they're wrong, we believe, he's credible, there's no variances, so we substitute our judgment and credibility for the commission. Can we do that? If the opposite conclusion is clearly apparent, you can. Based on what? Well, based on his testimony at trial that he had no accidents to his right knee before the work accident. He had one seven days before the work injury on November 23, 2013. He denied this injury at trial and then admitted that he completed an accident report for the injury. Furthermore, he denied any accidents to his right knee after the work injury on November 30, 2013. This was also inaccurate based on his medical records and the accident reports. So you have some inconsistencies. A lot of inconsistencies. Isn't that the case, I can't believe, in most of these cases, there's some inconsistencies? With causation, yeah, I would say that's exactly true. But you also have Russo's opinion, the only causation opinion, which supports the claimant. I think Dr. Russo's opinion, which was paid for by opposing counsel's firm, I believe his opinion was flawed due to the fact that Dr. Russo was under the impression that Mr. Watts had no injuries to his right knee before the work accident, and clearly that was incorrect considering he completed an accident report for a right knee injury on November 23, 2013, approximately seven days before the accident. I think we understand your argument on that. What about the PPD? So that issue, Mr. Watts submitted an AMA rating report under Section 8.1bA of the Illinois Workers' Compensation Act. Dr. Russo, who was Mr. Watts' chosen expert, rated his impairment 2% loss of use of the lower extremity as a result of the injury. As this court held in the case of Corn Belt Energy Corporation v. Illinois Workers' Compensation Commission in 2016, this court stated that the Illinois Workers' Compensation Commission is required to explain the relevance and weight of the five factors enumerated in Section 8.1bB of the Act. You're saying in this case the commission did not explain the weight they placed on the factors? Not at all. They mentioned, they considered the five factors, they mentioned them, but they did not explain the weight and relevance of each of the factors, and that is, as a matter of law, we're asking you to remand this case back to the commission in order to explain the weight and relevance of each of the enumerated factors. What it found, Mr. Watts suffered 15% loss of use of a right leg as a result of the November 30, 2013, work accident. Based on the foregoing, we ask this court to reverse the commission's decision on the issue of causation, and then the other issues would be moot. If there's no reversal on causation, then we ask this court to remand the issue of the nature and extent of Mr. Watts' disability under Section 8.1bB of the Illinois Workers' Compensation Act back to the commission to explain the weight and relevance of the enumerated factors. Thank you, counsel. Thank you. Counsel may respond. Thank you, Your Honor. Good morning, gentlemen. My name is Kevin Elder. I represent Mr. Watts in this matter. I'm going to keep my comments brief. First of all, so I'm just going to cut right to it. They're saying under Cornbelt that the commission didn't do it right. Well, the next sentence after when they're talking about it, in the first paragraph, they say, we're changing the PPD number, but we are otherwise affirming and adopting the decision of the arbitrator, which is attached here to and made a part here of. And literally stapled to that is the arbitration award. That is made a part of the commission decision. And at page six of the arbitration award, arbitrator Dollison goes through all five factors and gives the weight. That is a part of the commission decision. They don't restate all the facts when they make modifications. They adopted the arbitrator's decision. The only thing they changed was the PPD number. But they've otherwise adopted it. And on page six of the arbitration award, the weight is right there. So you're saying that's consistent with the law. The commission is ostensibly required under the statute to place the weight. We can agree with that. However, you're saying because it was already in the record and they adapted it, that is sufficient, even though they themselves did not specifically address it. That's exactly what I'm saying, Your Honor. Do you have any cases to support that? Not yet at this point. Well, I'm going to say, first of all, common sense. They've adopted the whole arbitration award and the factors are there. Their decision, while it doesn't have the four sentences or the five sentences, I give some weight, no weight, blah, blah, blah. They do it right. They adopt the arbitrator's award where that is laid out. So I believe that their decision does comply with Cornbell. It's a complete waste of judicial economy to send it down to the commission to add four sentences that are already a part of the award by adopting the arbitration award. Do we throw out all the facts because the commission doesn't list all the facts in there? No, we don't. They incorporated all those findings. They considered the same factors. They're apparently saying we give the same weight. We just come to a lowered number. So I think they have complied with Cornbell. We've got a PPI report. Justice Hoffman, I noted your dissent on Cornbell. We've got a PPI report. That's one of the five factors. I believe this decision, this commission decision, by incorporating and adopting the arbitrator's award complies with Cornbell. I'm at a loss to understand, however, when the statute requires that the relevance and weight of any factor used in addition to the level of impairment must be explained in the order. How is that complied with by saying I gave some weight, I gave no weight, I gave some weight, I gave no weight? That's mean. That doesn't allow anyone to make a determination as to whether the finding is in accordance with the manifest weight. This is a case where there's an impairment report by your own physician of 2 percent, and they come up with 15 percent. Why? And there's no explanation of that in here. Nothing. Your Honor, it has not been fleshed out, I think, at this point by courts, what it entails to say that I give this much relevance and why. I don't think there's a Well, it has to state from some factors that would justify the change. If they turned around and said, oh, we read the AMA report. It said 2 percent. We're giving them 2 percent. We don't think that any of the other factors outweigh the AMA report. That gives you a reason why. In this case, there isn't a single reason in here. Arbitrator accords some weight to this factor. Arbitrator gives some weight to this factor. Arbitrator accords no weight to this factor. Arbitrator accords weight to this factor. There's nothing. Judge, they're directed by statute to consider those factors. The statute doesn't say the words that we're supposed to use to explain that. So right now in my industry, in the industry, in comp, as long as those factors are considered and there is some mention of the weight that they are given, which is on page 6 of the decision of the arbitrator's award, then I would assert to this court that they have complied. The statute says must explain in a written order the relevance and weight. It must explain it. This explains nothing. And my problem with this is if we allow this to go on, how do we make a determination as to whether their finding is or is not against the manifest weight of the evidence when we don't know what relevance or weight they gave to these issues? Isn't that a good point? Isn't there a difference between a conclusion and an explanation? You have conclusions here. You don't have explanations. There is a difference. Other than the explanations that the arbitrator attempts to give. Are those explanations or conclusions? They're the experts on coming to these decisions, and this court is supposed to affirm those. If they're not, you know, as long as they're within the manifest weight of the evidence, there's no expert here for the other side. There's my guy's testimony. We know he had an injury. We know he had an acute injury. They didn't even hire an expert to question any of that. So that was the reason why I filed a motion for sanctions here, because 15 percent of a leg for a meniscus to take that case up here when they don't even have an IME. They are wasting your time, my time, and most importantly, they're delaying my client from getting. This was two years ago. No, we understand that, but this is a separate issue of law. This is not something that goes with the merits of his position. It's how we interpret the statutory requirement. And thus far, with the case law that has interpreted those requirements so far, I would attest to this court that this commission decision complies because they adopted the arbitrator's award where those factors are discussed and the weight given to them is discussed. We understand the argument. This is a different issue. We have not passed judgment on this issue yet, have we? Not worse. I think Kornfeld is your latest specific addressing of this issue. You know, the arbitrator gave him 22.5 percent loss of use to the right leg. The commission cut it down to 15 percent. Why? Politics.  Absolutely. The commission is marking down everything right now. Wait a minute. Is that in the record, politics? They adopted the arbitrator's findings as to the factors and as to the weight to be given. And they just came to a lower PPD number. Mr. Adams, your argument that the commission affirmed and adopted the arbitrator's decision would, I think, affirm the decision in its entirety and not reduce the PPD. But by reducing it, they somehow disagreed with the weight that the arbitrator had previously assigned to some of these factors in some way. So simply by saying, you know, we adopt the arbitrator's decision, you're saying they adopted it in its entirety, including the weight that the arbitrator assigned to the various factors. Well, it couldn't be because they had obviously assigned some different weight or some different method of evaluating it because they came up with a lower figure. Did they explain why they chose to reject it at certain points? They didn't do that, did they? They did not. But your point, I mean, if it had been just a straight affirming of the arbitrator's decision and that number, you know, certainly that's persuasive. Well, what I would ask this Court to do is to find that these are factual determinations, that their findings are not at, this is an arbitrator and a unanimous panel of commissioners, and that you find that their decision is not against the manifest weight of the evidence and not remand this to cause more delay when I feel it's unnecessary in this case. So back to the points that have been made from the bench here, you would say that finding compensability, obviously there's no error there, right? When it's the only evidence, yeah, causal connection shouldn't even be an issue here. Right. There seems to be this, I'll ask the closing counsel the same question, it seems to be a question of if the arbitrator's decision were adopted in full, your client would be better off. I think that would probably be more consistent with my proposal that they've adopted the decision, but they've changed one number of PPD. PPD, of course, PPD is not PPI, and so the PPI ranking is not, that impairment rating is never the permanent disability assigned, and I think by adopting the arbitrator's award that they considered the appropriate factors under current case law. Thank you. Counsel, you may reply. Yes. I think one of the main issues is when there's a PPD award and the employers see this rating of 2% of a lower extremity, and they give a higher award than what the rating is. Without an explanation? Yes, exactly. So I agree with Justice Harris. The Illinois Workers' Compensation Commission modified the award. They didn't explain their reasoning of the weight or the relevance of the factors when they lowered it from 22.5% to 15% permanent partial disability award. So should we remand it to tell them to raise it up? I believe it should be remanded back to the commission. Would it be consistent with their adoption of the arbitrator's award? I think it would be consistent with the case you guys decided last year, the Corn Belt Energy Corporation. Thank you. Thank you. Thank you, Counsel Bowe. For your arguments in this matter, it would be taken under advisement that the Commission shall issue the focus and brief recess.